UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Senthil Kumar Subramanian, | Case No. 18-cv-0661 (WMW/BRT) |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL DISMISSAL AND AFFIRMING MAGISTRATE JUDGE'S ORDER |
| Tata Consultancy Services Limited and Tata America International Corporation, | |
| Defendants. | |

Before the Court in this employment dispute are Defendants' motion to dismiss Count 3 of Plaintiff's amended complaint, (Dkt. 18), and Plaintiff's appeal of the August 6, 2018 Order of United States Magistrate Judge Becky R. Thorson, (Dkt. 67), which denied without prejudice Plaintiff's motion to file a second amended complaint. For the reasons addressed below, Defendants' motion for partial dismissal is granted and the magistrate judge's August 6, 2018 Order is affirmed.

### BACKGROUND

Defendant Tata Consultancy Services Limited (TCS) is an Indian corporation based in Mumbai, India, that provides information technology services and operates in 46 countries, including the United States. Defendant Tata America International Corporation is a subsidiary of TCS. Plaintiff Senthil Kumar Subramanian, a Minnesota resident, worked for TCS for more than 16 years until TCS terminated his employment in April 2017.

TCS assigned Subramanian to a retail business unit in October 2013. Subramanian held an annual business meeting in December 2013 as part of his work for the retail business unit. During the meeting, a TCS employee presented information that Subramanian believed to contain trade secrets misappropriated from one of TCS's customers. Because Subramanian disagreed with how the head of the retail business unit addressed this conduct, Subramanian reported the matter to TCS's human resources personnel and legal counsel approximately three years later. Ashok Seetharaman, TCS's North American head of human resources and ethics counsel, spoke with Subramanian on February 1, 2017, and promised to investigate Subramanian's concerns. Although Subramanian began his paternity leave that same day, he continued to follow up with Seetharaman about the status of the investigation. During the investigation, TCS's information security personnel and a human resources employee spoke to Subramanian on March 17, 2017, about the conduct he had reported.

When Subramanian returned from his paternity leave on March 31, 2017, he was denied entry at TCS's Bloomington, Minnesota, office. A front desk employee threatened to have Subramanian removed from the building and advised him that she was acting at the direction of the head of the retail business unit. Subramanian was permitted to enter his office a short time later after he contacted one of TCS's regional human resources employees. Subramanian subsequently reported this incident to TCS's human resources personnel and ethics counsel, explaining that he perceived this incident to be an act of retaliation.

The investigation into Subramanian's reports of misappropriation and retaliation ended on April 14, 2017. Seetharaman found no evidence of unlawful conduct but did not show Subramanian the investigation's findings and conclusions. Within an hour after Seetharaman closed the investigation, TCS terminated Subramanian's employment.

Subramanian commenced this lawsuit on March 9, 2018, and filed an amended complaint approximately one month later. The amended complaint alleges wrongful termination and retaliation (Count 1), violation of the Family and Medical Leave Act (FMLA) (Count 2), and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Count 3). As relevant here, Subramanian's RICO claim alleges that Defendants have engaged in a "pattern of racketeering activity" that includes theft of customers' trade secrets, a scheme to defraud employees by stealing their tax refunds, and a scheme to fraudulently terminate employees. Defendants move to dismiss Count 3 of the amended complaint on alternative grounds, arguing that either Subramanian lacks standing to pursue a RICO claim or Subramanian fails to state a RICO claim. Because Subramanian did not file a timely response to Defendants' motion, the Court cancelled the scheduled hearing and took the motion under advisement on the written submissions.

Subramanian filed a second amended complaint on May 18, 2018, which was stricken by the magistrate judge because Subramanian failed to seek leave to amend his complaint as required by the Local Rules. Subramanian subsequently moved for leave to file a second amended complaint. In an August 6, 2018 Order, the magistrate judge denied Subramanian's motion without prejudice, concluding that Defendants will be

prejudiced if a ruling on Subramanian's motion to amend precedes a ruling on Defendants' second motion to dismiss. Subramanian appeals the August 6 Order.

## ANALYSIS

### I. Standing

Defendants move to dismiss Count 3 of the amended complaint, arguing that Subramanian lacks standing. "When a plaintiff alleges injury to rights conferred by statute, two separate standing-related inquiries are implicated: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 934 (8th Cir. 2012). Because Article III standing presents a question of justiciability, it must be decided first. *Id.* Without Article III standing, a federal court has no subject-matter jurisdiction over the claim. *Id.* The Court addresses each standing-related inquiry in turn.

#### A. Constitutional Standing

Article III of the United States Constitution limits federal jurisdiction to actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012). As a jurisdictional prerequisite, standing must be established before the merits of a lawsuit can be reached. *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007). If a federal district court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3). When standing is challenged, the party invoking federal jurisdiction must establish that the

4

requirements of standing have been satisfied. *Mineta*, 495 F.3d at 569. Standing is determined based on the facts as they existed when the complaint was filed. *Lujan*, 504 U.S. at 569 n.4. To satisfy the requirements of standing, a plaintiff must (1) allege to have suffered an injury in fact, (2) establish a causal relationship between the defendant's conduct and the alleged injury, and (3) show that the injury would be redressed by a favorable decision. *Id.* at 560-61; *Mineta*, 495 F.3d at 569.

### 1. Injury in Fact

An alleged "injury in fact" must be "concrete, particularized, and either actual or imminent." *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009). A particularized injury affects the plaintiff in a "personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). And a "concrete injury . . . must actually exist," which means that it must be "real, and not abstract." *Id.* (internal quotation marks omitted).

Subramanian alleges that Defendants' scheme to defraud caused him to lose his tax refunds and that Defendants' scheme to terminate his employment for a fraudulent reason caused him to lose his job. This loss of employment, according to Subramanian, resulted in actual, consequential, and incidental losses, including loss of income and benefits. As alleged, these injuries are neither "conjectural" nor "hypothetical," they are actual. *Lujan*, 504 U.S. at 560. These injuries also are particularized. They affected Subramanian's interests, not those of another person or a segment of the public generally. *See Spokeo*, 136 S. Ct. at 1548; *see also Red River Freethinkers v. City of Fargo*, 679 F.3d 1015, 1024 (8th Cir. 2012) (concluding that alleged injury was particularized

5

because it affected plaintiffs "personally and directly" as opposed to merely alleging a "public grievance"). And the loss of money, employment, and benefits, whether tangible or intangible, are concrete injuries. They are "real, and not abstract." *See Spokeo*, 136 S. Ct. at 1548-49 (holding that a concrete injury may be tangible or intangible).

Subramanian has alleged an injury sufficient to establish Article III standing.

### 2. Causation

To establish a causal relationship between a defendant's conduct and the alleged injury, a plaintiff must allege an injury that is fairly traceable to the defendant's allegedly unlawful conduct and is not the consequence of the independent actions of a third party that is not before the court. *Lujan*, 504 U.S. at 560. "Proximate causation is not a requirement of Article III standing," even if proximate cause is an element of the cause of action. *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Notably, the standing inquiry "is *not* . . . an assessment of the merits of a plaintiff's claim." *Red River Freethinkers*, 679 F.3d at 1023 (emphasis added).

Subramanian alleges that Defendants unlawfully terminated his employment as part of their fraudulent scheme to avoid liability under state and federal employment laws and as a consequence of Subramanian reporting Defendants' other allegedly unlawful activity. As a result of his termination, Subramanian alleges, he suffered actual, consequential, and incidental losses, including loss of income and benefits. In addition, Subramanian alleges that Defendants' scheme to defraud him of his tax refunds also caused him monetary loss. These alleged injuries are fairly traceable to Defendants' conduct, as opposed to the conduct of another third party.

In summary, Subramanian has alleged a causal connection between his alleged injuries and Defendants' conduct that is sufficient to establish Article III standing.

### 3. Redressability

Subramanian also must demonstrate that it is "likely, as opposed to merely speculative, that [his] injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted). The amended complaint seeks, among other things, general and treble damages, including "all actual, consequential and incidental losses including, but not limited to, loss of income and benefits," as well as attorneys' fees and costs. Subramanian's alleged injuries are the loss of tax refunds and the loss of employment, along with the financial consequences of that lost employment. A favorable decision granting the monetary relief Subramanian seeks would redress those financial injuries. As such, Subramanian's alleged injuries are redressable.

For these reasons, Subramanian has Article III standing to pursue his RICO claim.

## B. Statutory Standing

In contrast to Article III standing, which addresses "the constitutional power of a federal court to resolve a dispute," statutory standing requires the determination that "Congress . . . has accorded *this* injured plaintiff the right to sue the defendant to redress [the plaintiff's] injury." *Miller*, 688 F.3d at 934 (internal quotation marks omitted). Analysis of this legal question requires an exercise in statutory interpretation. *Id.*

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs

through a pattern of racketeering activity or collection of unlawful debt." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). The victim of a racketeering scheme may bring a civil action against a person or entity alleged to have violated RICO. *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (citing 18 U.S.C. § 1964(c)).

To have statutory standing to assert a RICO claim, the plaintiff must have sustained an injury to the plaintiff's business or property caused by a RICO violation. *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012). The injury must be a "concrete financial loss." *Id.* An "injury to a valuable intangible property interest" does not confer standing. *Id.* (internal quotation marks omitted). Standing exists only if the plaintiff's injury was caused "by the conduct constituting the [RICO] violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *see also Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 13 (2010) (stating that the compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts of racketeering activity[1]). The defendant's conduct must be the proximate cause of the injury alleged, such that a "direct relation" exists between the asserted injury and the alleged conduct. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992).

The amended complaint first alleges that Defendants' racketeering activity includes Defendants' theft of trade secrets from two of Defendants' customers. Even if true, however, this alleged conduct has no direct relationship to Subramanian's alleged

---

[1] A predicate act of "racketeering activity" is an essential element of a RICO claim and is statutorily defined by reference to an exclusive list of criminal statutes. *See* 18 U.S.C. § 1961(1).

8

financial loss. Any injury caused by the theft of trade secrets from Defendants' customers is an injury to the *customers*, not Subramanian. The amended complaint does not allege, nor can it reasonably be inferred from the facts alleged, that Defendants stole *Subramanian*'s trade secrets or that the theft of trade secrets that belonged to Defendants' customers caused injury to Subramanian. Defendants' alleged theft of trade secrets cannot establish statutory standing for Subramanian's RICO claim for these reasons.

The amended complaint next alleges that Defendants' racketeering activity includes Defendants' scheme to defraud its employees by stealing their tax refunds through use of the postal service and wire communications, which occurred from 2002 to 2005. But the amended complaint also alleges that this fraudulent scheme was the subject of a prior class action lawsuit against Defendants that settled in 2013, in which Subramanian "shared in the settlement funds." The 2013 settlement agreement provides, in relevant part, that the class members "fully, finally, and forever settle and release any and all of the Released Claims," which are defined to include all claims or causes of action that were brought in the class action lawsuit or "were known or unknown that arise out of the facts alleged" in that lawsuit.[2] Because the United States District Court for the Northern District of California approved the settlement on July 18, 2013, and dismissed the action with prejudice as to all of the settlement class members, the conduct

---

[2] At the pleading stage, "courts may consider some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013) (internal quotation marks omitted).

9

underlying the 2013 settlement agreement cannot establish statutory standing for Subramanian's RICO claim.

The amended complaint next alleges that Defendants' racketeering activity includes Defendants' use of the postal service and wire communications to fraudulently terminate Defendants' employees so as to "to avoid having to pay severance and unemployment." But this fraudulent scheme allegedly injured *other* employees, not Subramanian. Because the amended complaint fails to allege that Subramanian suffered any financial loss as a result of the fraudulent termination of others' employment, any scheme to fraudulently terminate other employees cannot establish statutory standing for Subramanian's RICO claim.

The amended complaint also alleges that Defendants' racketeering activity includes Defendants' use of the postal service and wire communications to terminate Subramanian's employment fraudulently. When a plaintiff has been terminated after criticizing or refusing to participate in racketeering activity, the act of discharging the employee is not racketeering activity as defined in RICO, and it does not meet the definition of "predicate acts" under RICO. *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 953 (8th Cir. 1999). As such, to the extent that Subramanian alleges that Defendants terminated his employment in retaliation for his reporting of other racketeering activity, Subramanian's termination cannot establish statutory standing for his RICO claim.

Finally, the amended complaint appears to allege that Defendants' racketeering activity includes the use of the postal service and wire communications to facilitate a

scheme to avoid liability under state and federal employment laws by devising and communicating a false pretext for Subramanian's termination. The term "racketeering activity" includes mail and wire fraud, *see* 18 U.S.C. § 1961(1), an essential element of which is that the defendant devised or participated in a scheme to defraud, *see United States v. Redzic*, 627 F.3d 683, 689 (8th Cir. 2010). A "scheme to defraud" includes "any plan or course of action intended to deceive or cheat another out of money, property or property rights" by using material falsehoods. *United States v. Rabinowitz*, 56 F.3d 932, 934 (8th Cir. 1995); *see also Redzic*, 627 F.3d at 690. But nothing in the amended complaint suggests that Subramanian had a property interest in his continued employment. And even if he did, the amended complaint does not allege that Defendants used material falsehoods to "deceive or cheat" Subramanian out of his employment. Instead, the amended complaint alleges that Defendants violated state and federal employment laws and used falsehoods as a pretext for those actions. Even if Defendants' conduct might subject Defendants to liability under state and federal employment laws, Defendants' conduct does not fall within the scope of criminal liability required for mail or wire fraud. As such, Defendants' communications about Subramanian's termination of employment cannot establish statutory standing for his RICO claim.

In summary, because Subramanian has not alleged that Defendants engaged in any predicate acts of racketeering activity that proximately caused a concrete financial loss to Subramanian, he does not have statutory standing to bring a RICO claim.[3] Accordingly,

---

[3] In light of this conclusion, the Court need not address the alternative bases for dismissal advanced by Defendants.

Defendants' motion to dismiss is granted, and Count 3 of the amended complaint is dismissed without prejudice.[4]

## II. The August 6 Order

Subramanian appeals the magistrate judge's August 6 Order, which denied without prejudice Subramanian's motion to amend his complaint. When reviewing an appeal of a magistrate judge's ruling on a nondispositive issue, the district court's standard of review is "extremely deferential," *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008), and a ruling will be modified or set aside only if it is clearly erroneous or contrary to law, 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LR 72.2(a)(3); *Ferguson v. United States*, 484 F.3d 1068, 1076 (8th Cir. 2007). A ruling is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (internal quotation marks omitted). When a court "fails to apply or misapplies relevant statutes, case law or rules of procedure," its decision is contrary to law. *Id.* (internal quotation marks omitted).

Although leave to amend a pleading "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), there is not an absolute right to amend a complaint, and a

---

[4] Defendants argue that the dismissal of Count 3 should be with prejudice because Subramanian "has already had two bites at the apple and both times has failed to allege a viable RICO claim." Because it is not clear on this record that it would be impossible for Subramanian to adequately plead a RICO claim, the dismissal is without prejudice. If Subramanian moves for leave to amend his complaint to revive his RICO claim, the magistrate judge may address whether the amendment would be futile or would unduly prejudice Defendants. *See McAninch v. Wintermute*, 491 F.3d 759, 766 (8th Cir. 2007).

motion to amend may be denied based on a finding of "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment," *Doe v. Cassel*, 403 F.3d 986, 990-91 (8th Cir. 2005) (internal quotation marks omitted). As the magistrate judge observed, Subramanian filed an amended complaint after Defendants moved to dismiss the RICO claim in the original complaint. After Defendants moved to dismiss the RICO claim in the amended complaint, the parties represented in their Rule 26(f) Report to the Court that "no additional amendments are contemplated."[5] Subsequently, Subramanian failed to respond to Defendants' motion to dismiss but filed a second amended complaint in violation of Federal Rule of Civil Procedure 15. The magistrate judge ordered the second amended complaint stricken from the record. Thereafter, Subramanian moved to amend the complaint. In light of these circumstances, the magistrate judge found that Defendants would be prejudiced if their second motion to dismiss the RICO claim were not decided before Subramanian's motion to amend is decided.

The record establishes that the magistrate judge's decision is neither clearly erroneous nor contrary to law. Subramanian's dilatory conduct and subversion of the Federal Rules of Civil Procedure and the Local Rules resulted in repeated, undue delays that have necessitated, among other things, additional briefing by the parties and intervention by the Court. Notably, the magistrate judge's August 6 Order denies

---

[5] Although Subramanian's counsel did not sign the Rule 26(f) Report, Defendants' counsel represented the following to the Court: the parties met and conferred, the Rule 26(f) Report accurately summarizes what occurred, and Subramanian's counsel had three opportunities to review the Rule 26(f) Report before it was due. Subramanian does not dispute these facts in his appeal of the magistrate judge's order.

Subramanian's motion to amend *without* prejudice, and this Order similarly dismisses Count 3 *without* prejudice. As such, Subramanian will have an opportunity to seek leave to amend his complaint. The magistrate judge's August 6 Order is, therefore, affirmed.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss, (Dkt. 18), is **GRANTED**, and Count 3 of the amended complaint is **DISMISSED WITHOUT PREJUDICE**.

2. The August 6, 2018 Order of United States Magistrate Judge Becky R. Thorson, (Dkt. 67), is **AFFIRMED**.

Dated: November 29, 2018

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge